UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAFAEL R. M.,[1]

   Petitioner,

 v.

WARDEN, GOLDEN STATE ANNEX
DETENTION FACILITY, et al.,

   Respondents.

No.  1:26-cv-00902-JLT-SKO (HC)

**FINDINGS AND RECOMMENDATION
TO GRANT PETITION FOR WRIT OF
HABEAS CORPUS**

**(Doc. 1)**

**[7-DAY OBJECTION DEADLINE]**

Petitioner Rafael R. M. is a noncitizen proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner is a native and citizen of Brazil. (Doc. 1 at 2.) He entered the United States without inspection on October 24, 2024, seeking asylum. (Doc. 1 at 2.) He was detained by federal agents, who determined he was not a flight risk or danger to the community and released him on his own recognizance on December 12, 2024. (Id.) The year after he was released, Petitioner resided in Pacifica, California, and states he has complied with all obligations of the Immigration Court and conditions of his release. (Id.) Although he claims he has not violated any local, state or federal law, there is evidence of an ongoing criminal case alleging battery on a

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

spouse. (Doc. 10 at 16-17.) On October 22, 2025, Petitioner appeared for his Immigration and Customs Enforcement ("ICE") scheduled check-in and was detained. (Id.) ICE informed him he had violated his Alternatives to Detention ("ATD") conditions. (Id.) Petitioner denies having violated any ATD conditions, and the Government does not specify what conditions Petitioner violated. (Doc. 10 at 2, 14.)

Petitioner filed the instant petition along with a motion for temporary restraining order ("TRO") on February 2, 2026. (Docs. 1, 2.) On the same date, the District Judge denied the motion for TRO and referred the matter to the undersigned for a determination on the merits. (Doc. 8.) On March 4, 2026, Respondents filed a response to the petition. (Doc. 10.) On March 6, 2026, Petitioner filed two replies to the response. (Docs. 11, 12.)

## I.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## II.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner contends that Respondents have violated his due process rights by re-detaining him without first providing him with proper due process, including notice and opportunity to be heard such as with a pre-deprivation hearing. (Doc. 1 at 10-14.) He further contends he is detained pursuant to § 1226(a) and should have been granted a bond hearing wherein the Government must show he is a danger to the public or a flight risk. (Doc. 1 at 10-14.)

2

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. §1225(b)(1)(B)(ii), (Doc. 10 at 3-6), and that Petitioner's detention without a bond hearing is proper (Doc. 10 at 6-8). As discussed below, the arguments lack merit.

Apparently abandoning its previous argument that Petitioner, as an "applicant for admission," is subject to mandatory detention under § 1225(b)(2)(A), Respondents now claim Petitioner is being mandatorily detained under § 1225(b)(1). Respondents contend that because Petitioner was initially detained under § 1225(b)(1) and placed in expedited removal proceedings under 8 U.S.C. § 1229a, he is still subject to § 1225(b)(1) despite having been released on an order of supervision and having lived in the United States for the past year. Respondents contend that Petitioner is still an "applicant for admission" as a noncitizen who is "arriving" to the United States. (Doc. 10 at 4). Respondents' argument lacks merit.

Title 8 U.S.C. §1225(b)(1), by its own language, governs the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." According to the text of Section 1225(b)(1)(A)(i), a noncitizen "who is arriving in the United States" and satisfies the other criteria is subject to mandatory detention pending expedited removal. The plain meaning of the word "arriving" is being "in the process of reaching" a destination. Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 90 (D.D.C. 2025). The words "arriving," "arrival," and "arrive" in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, "not an interminable ... status" that attaches to a noncitizen upon arrival. Id. (citing approvingly this argument made by plaintiffs based on the text of 8 U.S.C. § 1225(b)(1)(A)(i), (F), (b)(2)(C), (d)(2)). Therefore, an "arriving alien" is one who is in the process of reaching the United States. See United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016) ("If the meaning [of a statute] is plain, the inquiry ends there."); Torres v. Holder, 764 F.3d 152, 156 (2d Cir. 2014), *aff'd sub nom*. Torres v. Lynch, 578 U.S. 452, 136 S.Ct. 1619, 194 L.Ed.2d 737 (2016) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.") Because Petitioner was initially apprehended in 2024 and then released and allowed to live in the United States for a year, he cannot be

3

classified as a noncitizen "who is arriving in the United States."

Respondents' citation to Section 1225(b)(1)(B)(ii) is unavailing. Under § 1225(b)(1)(B)(ii), "[i]f the officer determines at the time of the interview that an alien has a credible fear of persecution . . ., the alien shall be detained for further consideration of the application for asylum." Here, Petitioner claimed a fear of persecution but was then released on his own recognizance pursuant to § 1226(a). The Government's contention that his re-detention places him back to an "arriving" alien defies logic. As the Supreme Court noted in Jennings, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Jennings v. Rodriguez, 583 U.S. 281, 287, 138 S.Ct. 830 (2018).  Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." Id., 583 U.S. at 289, 138 S.Ct. 830 (emphasis added). As other courts have done, the Court finds Petitioner's detention is not government by § 1225(b)(1). Rather, Petitioner was released pursuant to § 1226(a).  See Sidqui v. Almodovar, No. 25-CV-9349 (VSB), 2026 WL 251929, at *8 (S.D.N.Y. Jan. 30, 2026) (collecting cases).

Respondents' contention that § 1225(b) applies to aliens who have been released into the country and then re-detained years later has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court recommends following the majority approach in finding that Petitioner's re-detention is governed by § 1226(a), not § 1225(b). See, e.g., Ortiz Donis v. Chestnut, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); see also M.R.R. v. Chestnut, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); Hortua v. Chestnut, et al.,

No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); Barco Mercado v. Francis, No. 25-CV-6582 (LAK), —— F.Supp.3d ——, ——, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); Mirley Adriana Bautista Pico v. Kristi Noem, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); Armando Modesto Estrada-Samayoa v. Orestes Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

The Court next turns to Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring

attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' December 2024 release of Petitioner on his own recognizance pending his immigration proceedings was similar, in that it allowed him to live in the country subject to supervision, but outside of custody, for a year. And that time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

**B. The Mathews Factors Demonstrate Petitioner is Entitled to a Bond Hearing**

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for almost a year, and during that time, he has lived, worked, and developed ties in the community. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Here, however, there is evidence that Petitioner was provided a bond hearing before an Immigration Judge ("IJ") on December 4, 2025. (Doc. 10 at 16-17.) At the conclusion of the hearing, the IJ denied release finding Petitioner posed a risk of danger to the public if released. (Id.) The IJ considered various pieces of evidence including a letter from Petitioner's wife relating to allegations of battery against her, and criminal records pertaining to an ongoing criminal court case. (Id.) Petitioner adamantly denies these allegations claiming he has never been arrested for domestic violence and has never had a detention hearing. (Doc. 12.) Petitioner asserts that because the bond hearing Respondents refer to allegedly took place in Chelmsford, Massachusetts, it should have no effect here. (Doc. 11 at 2.) Petitioner states a different burden of proof applies in this Circuit and the bond hearing previously held should not be given effect here. (Doc. 11 at 2.) This argument is not persuasive. It is undisputed that the bond hearing was held before an Immigration Judge, and the IJ concluded Petitioner posed a risk of danger to the public. However, Petitioner disputes ever having received a bond hearing.

Petitioner also requested a bond hearing before an IJ in this Circuit. In this subsequent hearing, the IJ denied relief for lack of jurisdiction. Courts in this circuit including this Court have previously determined that the IJ's reliance on Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) is misplaced, because Yajure Hurtado was incorrectly decided. See, e.g., Ortiz Donis v.

Chestnut, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); see also M.R.R. v. Chestnut, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025). Thus, this second hearing was improperly denied.

Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Based on the facts of this case, it is unclear whether Petitioner has been afforded proper due process. On the one hand, it appears Petitioner has received a bond hearing and been determined a risk of danger to the public. On the other hand, Petitioner adamantly contends no such hearing occurred. A subsequent hearing was also improperly denied for lack of jurisdiction. Accordingly, the probable value of the additional procedural safeguard of a bond hearing is compelling.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. Doe, 2025 WL 691664, at *6. "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that Petitioner is entitled to a bond hearing. And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-

5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same).

### III.   CONCLUSION & RECOMMENDATION

The Court therefore concludes that Respondents' re-detention of Petitioner violated his due process rights. In addition, Respondents are improperly detaining Petitioner without a bond hearing under § 1225(b), rather than the correct detention statute: § 1226(a). The Court concludes that the appropriate remedy in this case is to provide Petitioner with a bond hearing. For the foregoing reasons, the Court hereby RECOMMENDS:

1) The petition for writ of habeas corpus be GRANTED; and

2) Respondents be DIRECTED to provide Petitioner with a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within seven (7) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 13, 2026**                 /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE